Smith v. Ott.

---

No. 20,730.

J. SMITH, *Appellee*, v. FRED OTT, JR., et al., *Appellants*.

SYLLABUS BY THE COURT.

1. PARTITION FENCE—*Trespassing Cattle—Damages—Liability.* The provision relating to partition fences in section 4806 of the General Statutes of 1915 does not imply that if the stock of one party passes through a defective fence which he was to maintain and injures the property of another he can escape liability for the injury because the other had not kept his part of the fence in good repair and up to the legal standard.

2. SAME—*Findings Sustained by Evidence.* The evidence in the case is held to be sufficient to sustain the finding that the cattle which caused the injury passed through that part of the fence which defendants had agreed to maintain.

Appeal from Greenwood district court; ALLISON T. AYRES, judge. Opinion filed March 10, 1917. Affirmed.

*S. F. Wicker*, and *Gordon A. Badger*, both of Eureka, for the appellants.

*O. C. Zwicker*, of Eureka, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In this action the plaintiff recovered damages for the destruction of his growing corn by the cattle of the defendants, and from the judgment the defendants appeal.

The lands of plaintiff and defendants were situated on the

Smith v. Ott.

east and west, respectively, of a partition fence. There was an arrangement between them by which plaintiff was to maintain in proper repair the north half of the fence and the defendants to maintain the south half of it. The damage on account of which the suit was brought was done on August 2, 1914, although it appears that the cattle had been upon the plaintiff's land before that time and that plaintiff had built a private fence about his cornfield. On the day in question the cattle were found on the plaintiff's land where they had destroyed the corn and were driven back to the defendants' land through the south half of the fence. Conflicting testimony was introduced relating to the condition of each half of the fence during the season of 1914 and up to the day when the damage was done. One of the plaintiff's witnesses testified that on the 5th or 6th of August he did some work on the south half of the fence and that about fifteen rods of the fence was down and that some of the wire and posts were lying on the ground toward the west. Plaintiff testified that he saw the fence the night before the damage was done and that part of the south half was down and the wires tangled "where the cattle had been going back and forth." Plaintiff's wife also testified that part of the south half was down, and both testified that the north half was in good repair. On the other hand, there was testimony by defendants' witnesses, that near the north end of plaintiff's half, it was out of repair and was in that condition up to the time of the damage and during the summer, and one of the defendants testified that he looked at the fence the day before the injury and that the defendants' portion of the fence was in good condition while a portion of plaintiff's fence was down and that he saw signs of cattle passing back and forth. Upon the conflicting testimony the jury found that the cattle which did the damage went through the defendants' part of the fence and also that the plaintiff's part of the fence was not a lawful fence nor in good repair.

The principal contention at the trial was whether the cattle entered the corn through the north or south parts of the partition fence. The finding of the jury settled that contention in favor of plaintiff. Defendants insist that the finding is not supported by the testimony, but there appears to be enough to uphold the finding and verdict.

It is contended that because the jury found that plaintiff's part of the fence was not a lawful fence and not in good repair he is not entitled to recover damages done by defendants' cattle even though they did pass through the part of the fence which defendants agreed to maintain.   This claim is based upon the following provision of the fence statute:

"If any person liable to contribute to the erection of a partition fence shall neglect or refuse to make and maintain his portion of such fence, or shall permit the same to be out of repair, he shall not be allowed to have and maintain any action for damages incurred, but shall be liable to pay to the party injured all such damages as shall accrue to his lands and the crops, fruit trees and shrubbery thereon, and fixtures connected with the said land, such damage to be assessed by the fence viewers, on application of the party injured, one day's notice in writing having been first given to the party liable, either by delivering to him personally or by copy left at his usual place of abode, that such application for assessment of damages had been made, and the time when the fence viewers would attend to make such assessment."   (Gen. Stat. 1915, § 4806.)

This provision does not imply that a party who injures another can escape responsibility for the injury because the other may not have kept his own fence up to the legal standard.   It means no more than that if one person fails to maintain and keep his fence in repair and injury results to himself by reason of the defective fence he can recover no damages that may be done by the stock of others, but that he shall be liable to others for all damages resulting to them from his defective fence.

There is nothing substantial in the complaint of a statement by the court that testimony to the effect that the defendants' cattle were bunched together the day before they broke into the plaintiff's premises was not material.   It does not appear to have been material and could not have been prejudicial.

The judgment is affirmed.